The judges were unanimous in this case, and delivered their opinions separatim, at considerable length ; but when condensed, they were to the following effect:
That the soil of every country, and all the property of the inhabitants thereof, by the nature of the social compact, and the fundamental principles of every well regulated government stood pledged, and were liable for the support and defence of the state, and its government, to the extent which might be necessary for such defence and protection ; and without such aid and assistance, die government could not be maintained and kept up, nor the state protected. In return for which, the government oh its part, was bound to support and protect every individual citizen within the limits of the state, in all their rights and privileges, in peace and tranquillity; and in order to accomplish this great end effectually, there was nothing which it ought not to hazard, either of blood or treasure, which might tend to secure and perpetuate these inestimable blessings. Hence, the origin of those great and reciprocal duties of allegiance and protection, and hence also, the origin of taxes and taxation.
That from these principles, it was clearly deducible, that the payment of taxes, or the contribution of those aids necessary to defray the expenses of the government, must of necessity be a paramount obligation, and of course take place of all private contracts between citizen and citizen, of what nature or kind soever they might be. That so high was this obligation to the public, that it might well be compared to a mortgage, pro tanto, which created a lien on every man’s real and personal estate, for his share of the public taxes, according to the rules of appointment which the law had established.
This then being evidently the case, it was clear that the state had a prior right or preference, to any individual citizen, for the amount of the taxes due and unpaid by every *250 delinquent whatever ; and as these taxes were imposed generally on the whole of a man’s property, it was equally clear, that any part of ii that could be come at was liable for the payment of those arrears.
That with respect to the double tax, this court had no right or authority to consider it as a penalty defeasible, on the payment of what was originally due ; on the contrary, it appeared to be an increased tax, after the time limited for making the annual return; that the law was positive upon the subject, and enjoins it as a duty on the collectors to issue their warrants and levy the same, and pay it into the treasury. That this court had no right to interpose between the collectors of the public revenue and the state treasurers ; no such power was given by the act of 1788, nor was there any principle of public law to warrant such an interference.
The rule was made absolute on the sheriff, to pay the wholev amount of taxes mentioned in the collector’s warrant to the treasurer, and the residue, if any, towards the plaintiff’s execution.
Present, Waties, Bat and Johnson.
A7". B. A number of cases after this decision, were taken into the court of equity for relief from the double tax, but the parties were refused it, upon the principle of the above decided case.